<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL K. CHONG,<br><br>      Plaintiff,<br><br>v.<br><br>CITY OF HOBOKEN, HOBOKEN PARKING UTILITY, JOSEPH SCARDINO, PROPARK AMERICA NEW YORK LLC, JASON RUBINO, JOHN DOES 1-10, A fictitious designation for persons or entities whose true identity is currently not known,<br><br>      Defendants. | Civil Action No. 21-15825 (SDW)(LDW)<br><br>**OPINION**<br><br>August 15, 2022 |

**WIGENTON**, District Judge.

Before this Court are Defendants the City of Hoboken[1] ("Hoboken") and Joseph Scardino's ("Joseph O.") (collectively, the "Hoboken Defendants") Motion to Dismiss (D.E. 41) and Defendants Propark America New York LLC ("Propark") and Jason Rubino's ("Jason R.") (collectively, the "Propark Defendants") Motion to Dismiss (D.E. 42) Plaintiff Michael K. Chong's ("Plaintiff") Amended Complaint (D.E. 38 ("Compl.")) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper

---

[1] Defendant Hoboken Parking Utility ("Hoboken Parking") is not an entity separate from the municipality, the City of Hoboken. *See* N.J. Stat. Ann. § 40:11A–4 ("The governing body of any county or municipality may, by resolution or ordinance, as appropriate, create a public body corporate and politic and a political subdivision of the State to be known as the "Parking Authority of the," inserting all or any significant part of the name of the municipality or county creating such authority [ . . .] Such authority shall constitute an agency and instrumentality of the municipality or county creating it.") Thus, Hoboken Parking serves as "an agency and instrumentality of the municipality[,]" rather than as an independent entity. The proper defendant is therefore the municipality itself, not Hoboken Parking. Therefore, Hoboken Parking is not a proper defendant in this action. Accordingly, the Default entered against Defendant Hoboken Parking on October 21, 2021 is hereby Vacated and Plaintiff's claims against Defendant Hoboken Parking must be dismissed.

1

pursuant to 28 U.S.C. §§ 1441(a) and 1445(a).  This opinion is issued without oral argument pursuant to Rule 78.  For the reasons stated below, the Hoboken Defendants' and the Propark Defendants' Motions to Dismiss are **GRANTED**.

I. <u>**BACKGROUND AND FACTUAL HISTORY**</u>

Plaintiff, an attorney, files this matter *pro se*.  Plaintiff is a Korean American who has resided in Hoboken, New Jersey for approximately twenty (20) years and has parked his "vehicle(s)" in the parking garage known as Garage G (the "Parking Garage") located at 315 Hudson Street, Hoboken, New Jersey. (Compl. at ¶¶ 1, 3, 11.)  Hoboken owns or leases the Parking Garage and Propark operates the Parking Garage.  (*Id.* at ¶¶ 13–14.)  Without providing further factual detail, Plaintiff asserts that "[his] payment of a monthly fee in exchange for the right to park in [the Parking Garage] constitutes a contract between Propark and Plaintiff" and that "[he] is a third party beneficiary of the contract pursuant to which Propark manages and operates parking garages in the City of Hoboken."[2] (*Id.* at ¶ 12.)

Plaintiff alleges that he purchased the subject vehicle with intent to sell prior to July 17, 2019. (*Id.* at ¶ 15.)  Plaintiff further alleges that on or prior to July 17, 2019, he parked the vehicle in the Parking Garage with a transponder displayed indicating his right to park. (*Id.* at ¶¶ 11, 21.)  When Plaintiff went to the Parking Garage at approximately 8:00 a.m. on July 17, 2019 to retrieve the vehicle, Plaintiff discovered that there was a boot on one of the tires of his vehicle and a note on the vehicle's window instructing him to call a telephone number that he later learned was for the Propark office.[3] (*Id.* at ¶ 22.)  Plaintiff claims he spoke with a Propark employee on the phone,

---

[2] Plaintiff has not pled facts detailing who he pays the monthly parking fee to; how much the monthly parking fee is; or how many cars he is permitted to park in the Parking Garage.  Plaintiff has also not pled that he executed a contract with Hoboken or Propark to park in the Parking Garage.

[3] Plaintiff does not plead facts identifying who placed the temporary boot on the vehicle.

who stated that he would call his Propark manager Jason R. (*Id.* at ¶ 23). The Propark employee called Plaintiff back after speaking with Jason R. and stated that Plaintiff would have to wait until the morning to speak with Jason R., as well as Joseph S., the Parking Garage Manager for Hoboken and/or Hoboken Parking. (*Id.* ¶ 25). Plaintiff returned to the Parking Garage the morning of July 18, 2019 and found the boot was still on his vehicle with a new note present that provided a phone number for Jason R. (*Id.* at ¶ 27). Plaintiff called Jason R. and asked why his vehicle was still booted. (*Id.* at ¶ 28). Jason R. responded that "Propark did not know who the owner of the vehicle was, and that the vehicle was not authorized to park in the garage." (*Id.*) Jason R. further advised that "Propark looked up the vehicle's VIN number and found that the vehicle was owned by another person[.]" (*Id.*)

Thereafter, Plaintiff provided Jason R. with his transponder and Jason R. looked up his parking account at the Propark office and verified the account. (*Id.* at ¶ 31). Jason R. advised that the vehicle was registered under a different name, so Propark did not know the vehicle belonged to Plaintiff. (*Id.*) Jason R. further advised that the car was booted because they did not know who the owner of the vehicle was [and] the registered owner of the vehicle was not listed in the system as a monthly parker." (*Id*. at ¶ 32–33). Joseph S. reiterated the same when asked by Plaintiff why the car was booted. (*Id*. at ¶ 33). Plaintiff concluded that this was false because the "[…] vehicle had a New Jersey Temporary License plate tag, which if searched would clearly identify the Plaintiff as the owner." (*Id*. at ¶ 34). However, Joseph S. looked up the license plate tag and found that it was expired. (*Id*. at ¶ 35).

Plaintiff then returned to the garage with Jason R. and Joseph S. to view the vehicle. (*Id.* at ¶¶ 37-38). Plaintiff was then asked by Jason R. if Plaintiff was the one who had previously filed

3

a claim for water damage.[4] (*Id*. at ¶ 38). To which Plaintiff responded in the affirmative. (*Id*.) Thereafter, Plaintiff alleges that Jason R. refused to remove the boot from his car and that both Jason R. and Joseph S. "laughed at Plaintiff telling him …You will never get that boot off your car if we can help it and, …You do not deserve a Maserati, get a Japanese car, a Toyota… .'" (*Id*. at ¶ 40) (internal quotations omitted). Plaintiff contacted Ryan Sharp, Director of Transportation and Parking for Hoboken, who allegedly ordered the boot to be removed from Plaintiff's vehicle. (*Id*. at ¶ 42).

Without providing further factual detail, Plaintiff contends that "[d]uring and after the events of July 19 and July 20, 2019, Plaintiff heard "[Jason R. and Joseph S.], in unison and/or in tandem, make numerous racial/ethnic slurs about Asian Americans." (*Id*. at ¶ 44). Plaintiff does not plead what the alleged "slurs" were; when these alleged "slurs" were made; and which Defendant said these alleged "slurs". Plaintiff further contends that "[Jason R. and Joseph S.] stated that Plaintiff should go back to China where he came from", posted signs in the Parking Garage stating "Tokyo", and "stalked and followed Plaintiff." (*Id*. at ¶¶ 45–47.)

Plaintiff next alleges that on some unidentified date, he left his trial briefcase in the Parking Garage. (*Id*. at ¶ 48.) When he reported the "theft" of his briefcase, Joseph S. refused to assist Plaintiff. Plaintiff alleges that a few days later, the briefcase was turned into the police station. (*Id*. ¶¶ 48, 49.) Later that week, Plaintiff alleges that Joseph S. inquired as to how he got the bag back while laughing. (*Id*. ¶ 50.) Plaintiff then concluded that "[Joseph S.] took the bag, and then later turned it into the police after Plaintiff requested the garage video tapes." (*Id*. ¶ 50).

---

[4] In May 2018, Plaintiff alleges that he filed a claim with Propark to be compensated for water damage that his vehicle incurred. (Compl. at ¶ 18.) Thereafter, on March 4, 2019, Plaintiff filed a Notice of Tort Claim against Hoboken for the alleged water damage. (*Id*. at ¶ 19.) On May 28, 2019, Plaintiff filed a complaint against Propark in the Superior Court of New Jersey, Hudson County in connection with the alleged water damage. (*Id*. at ¶ 20.) Plaintiff provides no further factual detail on the alleged action.

On July 15, 2021, Plaintiff initiated this action against Defendants in the Superior Court of New Jersey, Law Division, Hudson County.[5] The Propark Defendants filed a Notice of Removal on August 20, 2021. Plaintiff subsequently filed an Amended Complaint asserting six counts: (1) discrimination under the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5–12 *et seq.*; (2) discrimination under 42 U.S.C. § 1981; (3) Intentional Infliction of Emotional Distress; (4) Unlawful Taking of Property; (5) Reprisal and Harassment in violation of the NJLAD; and (6) Negligent Supervision and Training. (D.E. 38.) The Hoboken Defendants and the Propark Defendants now move to dismiss the Amended Complaint. (D.E. 41, 42.). All briefing has been timely submitted. (D.E. 50, 51, 52, 53.)

## II. **LEGAL STANDARD**

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515

---

[5] Prior to filing this action, on November 8, 2019, Hoboken received a Tort Claims Notice from Plaintiff dated October 30, 2019 regarding the temporary booting of Plaintiff's vehicle. (D.E. 41-2 at 22-23.) Plaintiff did not complete Hoboken's supplemental Tort Claims Notice form. (D.E. 41-2 at 25-37.)

Although a district court generally must confine its review on a Rule 12(b)(6) motion to the pleadings, *see* Fed. R. Civ. P. 12(d), "a court may consider certain narrowly defined types of material without converting the motion to dismiss" into a motion for summary judgment. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). This includes "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal citation omitted); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (internal quotation omitted) (noting the Court can consider documents attached to the complaint or those "*integral to or explicitly* relied upon in the complaint"). The Hoboken Defendants attached to their motion, inter alia, Plaintiff's Tort Claims Notice dated October 30, 2019. (D.E. 41-2 at 22-23.) Because the referenced documents and the information contained therein are "integral to" the Complaint, the Court will consider and refer to said documents in resolving the present motion. *See In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997).

5

F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

## III.  DISCUSSION[6]

### A. Count One (NJLAD)

Plaintiff brings Count One of the Complaint against Defendants for violation of the NJLAD. (Compl. at ¶¶ 52–55.) The NJLAD broadly prohibits discrimination on the basis of a litany of enumerated factors including, *inter alia*, race, creed, color, national origin, ancestry, age, sexual orientation, and gender identity. *See generally* N.J. Stat. Ann. §§ 10:5-1, *et seq.* The NJLAD also makes it unlawful,

---

[6] Plaintiff pleads no allegations against the Propark Defendants in Counts Five and Six of the Complaint. (Compl. at ¶¶ 70-78, 80-83.) To the extent Plaintiff brought Counts Five and Six against the Propark Defendants, Plaintiff's claims are therefore dismissed.

> For any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof...."

N.J. Stat. Ann. § 10:5–12(f)(1).

To state a claim under the NJLAD for discrimination by a place of public accommodation, a Plaintiff must, (1) "demonstrate that she is a member of a protected class"; (2) must "show that the defendant's actions were motivated by discrimination"; and (3) must demonstrate that "others not within the protected class did not suffer similar adverse ... actions." *Florentino v. City of Newark*, Civ. No. 19-21055, 2020 WL 5105291, *14 (D.N.J. Aug. 31, 2020) (quoting *Partovi v. Felcian College*, No. A-1971-09T1, 2011 WL 867275, at *7–8 (N.J. Super. Ct. App. Div. Mar. 15, 2011) (internal quotations and citations omitted) (alteration in original). "[C]onclusory allegation of discrimination does not satisfy the pleading requirements for an NJLAD public accommodation claim." *Florentino v. City of Newark*, 2020 WL 5105291, at *14 (citing *Partovi v. Felcian College*, 2011 WL 867275, at *8. Even a generous reading of the Complaint does not reveal facts sufficient to sustain any cause of action under the NJLAD.

i. **Claims Against the Hoboken Defendants**

Plaintiff has failed to adequately plead a cause of action under the NJLAD against the Hoboken Defendants. Plaintiff contends, in a conclusory fashion, that by "booting [his] vehicle" Hoboken unlawfully discriminated against him on the basis of his status as a Korean American. (Compl. at ¶ 54.) While Plaintiff has alleged that he is a member of a protected class, Plaintiff has not alleged a nexus between his race and the booting of his vehicle. (*See generally* Compl.) Plaintiff has failed to provide sufficient facts to demonstrate that his vehicle was booted on account of his status as a Korean American and that others outside of his race or national origin received

7

different treatment from Defendant Hoboken. Without more, Plaintiff has not plausibly alleged a violation of the NJLAD.

Moreover, the allegations in the Complaint make clear that the Hoboken Defendants were not aware that the car was owned by Plaintiff when it was booted. (Compl. at ¶¶ 32–33). Rather, the vehicle was booted because it was unauthorized to park in the parking garage. (*Id.* at ¶¶ 28, 32–33.) The Complaint specifically alleges, *inter alia*, that "Propark, did not know who the owner of the vehicle was," as "the vehicle was not authorized to park in the garage"; "Propark looked up the owner of the car using the vehicle's VIN number [and found] "that the vehicle was owned by another person, i.e., not Plaintiff"; "[Jason R.] advised Plaintiff that Propark did not know the vehicle was Plaintiff's because it was registered under another name"; and Joseph Scardino advised that he booted the vehicle because the VIN number for the vehicle showed that Plaintiff was not the owner of the vehicle and "the name of the vehicle owner was not listed as a monthly parker." (*Id.* at ¶¶ 28, 32–33.) In sum, Plaintiff's assertion that his vehicle was booted on account of his status as a Korean American in violation of the NJLAD is belied by the Complaint. Count One against the Hoboken Defendants is therefore dismissed.

ii. **Claims Against the Propark Defendants**

For the reasons set forth above, Plaintiff's claims for violation of the NJLAD against the Propark Defendants must be dismissed. In a conclusory fashion, Plaintiff contends that the Propark Defendants "unlawfully discriminated against Plaintiff on account of Plaintiff's race, national origin and\or race, and denied or discriminated against Plaintiff in the furnishing of the accommodations, advantages, facilities or privileges as a paid monthly parker at Garage G." (Compl. at ¶ 54.) Plaintiff has not pled with any sufficiency that the Propark Defendants booted his vehicle because of his status as a Korean American and that others outside of his race or

national origin received different treatment from the Propark Defendants. Rather, the allegations in the Complaint demonstrate that Plaintiff was afforded the same benefits and privileges of parking in the Parking Garage like other paid monthly parkers for twenty years. (*Id.* at ¶ 11.)

Further, the Complaint specifically alleges, *inter alia*, that Plaintiff's vehicle was booted because "the vehicle was not authorized to park in the garage" and "the name of the vehicle owner was not listed as a monthly parker." (*Id.* at ¶¶ 28, 32–33.) Plaintiff provides no reasonable basis to support a finding that a temporary booting of his vehicle resulted in a denial of a public accommodation. Without more, Plaintiff has not plausibly alleged a violation of the NJLAD against the Propark Defendants. Count One against the Propark Defendants is therefore dismissed.

## B. Count Two (42 U.S.C. § 1981)

Plaintiff brings Count Two of the Complaint against Defendants seeking to impose liability against them for violations of his constitutional rights under 42 U.S.C. § 1981. (Compl. at ¶¶ 56–62.)

### i. Claims Against Defendant Hoboken

Government entities are generally not liable under § 1981 unless injury results from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy[.]" *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). In other words, liability will be imposed when the municipally enacted "policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one its employees." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991) (citing *Polk County v. Dodson*, 454 U.S. 312 (1981); *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989). "When a [p]laintiff brings a complaint under *Monell* against a municipality, the offending custom, policy,

9

or practice must be [pled] specifically in the complaint." *Lapella v. City of Atlantic City*, Civ. A. No. 10-2454, 2012 WL 2952411, at *5 (D.N.J. July 18, 2012) (citing *McTernan v. City of York*, 564 F.3d 636 (3d Cir. 2009)).

The United States Supreme Court has held that "the express action at law provided by § 1983 for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Oaks v. City of Philadelphia*, Civ. No. 02-2772, 2003 WL 1228025, *1 (3d Cir. Mar. 17, 2003) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). "Thus to prevail on his claim for damages against [government entity], [a claimant] must show that the violation of his "right to make contracts" protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases." *Jett*, 491 U.S. at 702, 735. Liability cannot be predicated, however, on a theory of *respondeat superior* or vicarious liability. *Monell,* 436 U.S. at 692–94.

Here, Plaintiff has failed to adequately plead the existence of an official policy or custom, implemented by Defendant Hoboken, that caused his alleged injuries. (*See generally* Compl.) Plaintiff pleads only that: "[he] was denied the right to enjoy the benefits and privileges of the contractual relationship in that Plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory" and that Defendants Joseph S. and Jason R. "ma[de] numerous racial/ethnic slurs about Asian Americans to Plaintiff." (Compl. at ¶¶ 44, 61.) This is insufficient. Plaintiff does not plead what the alleged "slurs" were; when these alleged "slurs" were made; and which Defendant said these alleged "slurs". Beyond these conclusory allegations, the Complaint does not plead the existence of an unconstitutional policy or; specify what exactly that custom or policy was; or assert facts showing a direct causal

link between a municipal policy or custom and the alleged constitutional deprivation. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief that rises "above the speculative level." *Phillips,* 515 F.3d at 231–32 (quotation omitted). Indeed, Plaintiff provides no reasonable basis to support a finding that a municipally-enacted policy, practice, or custom led to a deprivation of Plaintiff's constitutional rights. Count Two against Defendant Hoboken is therefore dismissed.

### ii. Claims Against the Propark Defendants

A plaintiff seeking to bring a claim under Section 1981 must demonstrate: "(1) that plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (citation omitted). Plaintiff's Section 1981 claim against the Propark Defendants fails for the reasons discussed below.

As a preliminary matter, Plaintiff does not have any contractual relationship or contract with Propark. Plaintiff pleads only that "Plaintiff's payment of a monthly fee in exchange for the right to park in Garage G constitutes a contract between Propark and Plaintiff" and that "[he] is a third party beneficiary of the contract pursuant to which Propark manages and operates parking garages in the City of Hoboken." (Compl. at ¶ 12.) The Complaint does not allege that Plaintiff actually executed a contract with Propark, was a party to a contract with Propark, or that he pays his monthly parking fee to Propark. As such, Plaintiff lacks standing to bring a claim under Section 1981, as Plaintiff has failed to establish the existence of a contract between him and Propark.

Moreover, Plaintiff fails to plead facts sufficient to show that the Propark Defendants intended to discriminate against Plaintiff on account of his status as a Korean American and that

11

the Propark Defendants treated him differently than others outside of the protected class who were similarly situated.[7] *See, e.g.*, *Special Police Org. v. City of Newark*, Civ. No. 19-8444, 2019 WL 4410066, at *3 (D.N.J. Sept. 16, 2019) (dismissing Section 1981 claim where plaintiffs failed to "set forth any facts to suggest that [they] were discriminated against based on their races or ethnicities"); *Williams v. Wells Fargo Bank, N.A.*, Civ. No. 16-1003, 2016 WL 4370033, at *4 (D.N.J. Aug. 10, 2016) (dismissing Section 1981 claim where plaintiff failed to "establish that [d]efendant treated him differently than others outside of the protected class who were similarly situated") (citation and internal quotations omitted). Count Two against the Propark Defendants is therefore dismissed.

### C. Counts Three (Intentional Infliction of Emotional Distress), Four (Unlawful taking of Property), and Six (Negligent Supervision and Training)

Plaintiff brings Counts Three, Four, and Six of the Complaint against Defendants for Intentional Infliction of Emotional Distress; Unlawful Taking of Property; and Negligent Supervision and Training.[8] (Compl. at ¶¶ 64–65, 67–68, 80–83.)

#### i. Counts Three and Four Against Defendant Joseph S. (Individually)

It is unclear from the Complaint whether Plaintiff asserts Counts Three and Four for Intentional Infliction of Emotional Distress and Unlawful Taking of Property against Joseph S. individually. (Compl. at ¶¶ 64–65, 67–68.) To the extent Plaintiff asserts claims against Joseph S. individually, Plaintiff's claims are insufficiently pled and must be dismissed. (*Id.*)

"[T]o establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that

---

[7] Notably, Plaintiff has not alleged facts demonstrating that the Propark Defendants booted his vehicle.

[8] Plaintiff concedes that Counts Three, Four, and Six of the Complaint should be dismissed. (D.E. 50 at 17.) Counts Three, Four, and Six against the Hoboken Defendants are therefore dismissed with prejudice. To the extent Counts Three and Four are asserted against Joseph S. as "an agent, servant or employee of Hoboken[,]" the claims are dismissed with prejudice.

12

is severe." *Buckley v. Trenton Sav. Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988).  A defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Restatement* § 46 cmt. d).  A plaintiff's distress must be "so severe that no reasonable person could be expected to endure it," *Mardini v. Viking Freight, Inc.*, 92 F. Supp. 2d 378, 384 (D.N.J. 1999), and requires a plaintiff to show "that they suffered from a specific ailment and sought treatment for it." *Phillips v. N.J. Transit*, Civ. No. 19-13427, 2021 WL 1661087, at *12 (D.N.J. Apr. 28, 2021) (citing *Botts v. The New York Times Co.*, No. 03-1582, 2003 WL 23162315, at *9 (D.N.J. Aug. 29, 2003) (collecting cases) (granting 12(b)(6) motion to dismiss because plaintiffs did "not allege[ ] that they have sought medical treatment for their distress"); *see also Hill v. N.J. Dep't of Corr. Com'r Fauver*, 776 A.2d 828, 841-42 (N.J. Super. Ct. App. Div. 2001) (defining severe emotional distress as "[a] severe and disabling mental or emotional condition which is capable of being generally recognized and diagnosed by professionals trained to do so").  Here, Plaintiff provides no factual detail as to any physical manifestations brought about as a result of the incident, any ailment suffered, or treatment sought for the alleged ailment.  Plaintiff has not alleged the requisite outrageous and severe conduct necessary to establish a claim for Intentional Infliction of Emotional Distress.  Plaintiff only pleads that he "continues to suffer a severe and disabling emotional and mental distress condition." (Compl. at ¶ 65.)  This is insufficient.  Count Three against Joseph S. is therefore dismissed.

Moreover, Plaintiff's claim that "Defendants' conduct in improperly booting Plaintiff['s] vehicle, and refusing to remove the boot deprived Plaintiff of the use of the vehicle and constitutes an unlawful taking of property[,]" must be dismissed.  As pled, Plaintiff has alleged a New Jersey

criminal statute —N.J.S.A § 2C:20-3,[9] which he has no standing to bring in this court.  (Compl. at ¶ 67–68.)  Count Four against Joseph S. is therefore dismissed.

### ii. Counts Three and Four Against the Propark Defendants

For the reasons discussed above, Plaintiff has failed to adequately plead causes of action for Intentional Infliction of Emotional Distress and Unlawful Taking of Property under Counts Three and Four of the Complaint.  (Compl. at ¶¶ 64–65, 67–68.)  Plaintiff has failed to provide factual detail as to any alleged ailment suffered or treatment sought.  Accordingly, Counts Three and Four against the Propark Defendants are dismissed.

### D. Count Five (Reprisal and Harassment in Violation of the NJLAD) against Defendant Hoboken

Plaintiff's claims for reprisal and harassment in violation of the NJLAD in Count Five of the Complaint against Defendant Hoboken are insufficiently pled.[10]  (Compl. at ¶¶ 70–78.) To maintain a claim for retaliation, a plaintiff must plead facts showing (1) that he engaged in a protected activity; (2) that he suffered an adverse action; and (3) that there was a causal connection between the protected activity and the adverse action.  *See, e.g.*, *Estate of Olivia ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010) (citing *Moore v. City of Philadelphia,* 461 F.3d 331, 340–41 (3d Cir. 2006)).

Plaintiff's Complaint is devoid of any facts to establish a *prima facie* retaliation claim.  Plaintiff pleads only that "[Joseph S.] made derogatory gestures to Plaintiff"; Joseph S. wrote his initials "in the dust above the door handle on the driver's side of Plaintiff's vehicle"; "Plaintiff

---

[9] N.J.S.A § 2C:20-3 provides that  "[a] person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof."

[10] To the extent Plaintiff intended to bring claims against Joseph S. under Count Five for reprisal and harassment in violation of the NJLAD, Plaintiff's claim fails.  Joseph S. is "an agent, servant or employee of Hoboken", not the employer.

found markings on his vehicle in the exact same spot [Joseph S.] had previously written his initials"; and "[Joseph S.] sent Plaintiff an email requesting that Plaintiff submit a proposal in response to a bid request." (Compl. at ¶¶ 72–76.) Plaintiff's reliance upon these allegations as evidence that Defendant Hoboken engaged in harassment and reprisal against Plaintiff for filling a Complaint falls flat. Without identifying the dates or specifying the details of the aforesaid conduct, Plaintiff has failed to demonstrate that an adverse action has been taken against him in retaliation for any protected activity. (*Id.* at ¶¶ 72–76.) Rather, through conjecture and bald assertions, Plaintiff alleges that the "aforesaid conduct of Joseph S. constitutes an attempt to coerce, intimidate, threaten, or interfere with Plaintiff" engaging in a protected activity. (*Id.* at ¶ 77.) Count Five against Defendant Hoboken is therefore dismissed.

## IV. CONCLUSION

For the reasons set forth above, the Hoboken Defendants' and the Propark Defendants' Motions to Dismiss are **GRANTED**. Count One (NJLAD) against the Hoboken Defendants and the Propark Defendants is dismissed. Count Two (42 U.S.C. § 1981) against Defendant Hoboken and the Propark Defendants is dismissed. Counts Three (Intentional Infliction of Emotional Distress), Four (Unlawful Taking of Property), and Six (Negligent Supervision and Training) against the Hoboken Defendants are dismissed with prejudice. Count Three (Intentional Infliction of Emotional Distress) against Joseph S. (individually) and the Propark Defendants is dismissed without prejudice. Count Four (Unlawful Taking of Property) against Joseph S. (individually) and the Propark Defendants is dismissed with prejudice. Count Five (Reprisal and Harassment in violation of the NJLAD) against Defendant Hoboken is dismissed without prejudice. Plaintiff shall have one final opportunity to amend the complaint. Plaintiff shall file an amended complaint within thirty (30) days.

An appropriate order follows.

              ___/s/ Susan D. Wigenton_____
              **SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc:  Parties
    Leda D. Wettre, U.S.M.J.